1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10

11

12

13

14

| | |
|---|---|
| REDFIN CORPORATION, a Delaware corporation,<br><br>                Plaintiff,<br><br>    v.<br><br>iPayOne, LLC, a California limited liability company,<br><br>                Defendant. | Case No. 2:17-CV-1217<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT OF NO TRADE SECRET MISAPPROPRIATION AND NO BREACH OF NON-DISCLOSURE AGREEMENT**<br><br>**JURY DEMAND** |

15

16

17

Plaintiff Redfin Corporation ("Plaintiff" or "Redfin"), by and through its attorneys, brings this complaint against Defendant iPayOne, LLC ("Defendant" or "iPayOne") and alleges the following:

18

**INTRODUCTION**

19

20

21

22

1.       This is an action for declaratory judgment of no trade secret misappropriation under the Federal Defend Trade Secrets Act, 18 U.S.C. §§ 1832 *et seq.*, the Washington Uniform Trade Secrets Act, R.C.W. 19.108 *et seq.*, and the California Uniform Trade Secrets Act pursuant to Cal. Civ. Code §§ 3426 *et seq.*, and no breach of a nondisclosure agreement.

23

24

25

26

2.       iPayOne sought to have a business partnership with Redfin – claiming it had some valuable proprietary business offering.  However, that offering turned out to be nothing more than selling leads for potential real estate listings to Redfin.  When Redfin said it was not interested, iPayOne threatened to sue Redfin for allegedly misappropriating what iPayOne

COMPLAINT FOR D. J. NO TRADE SECRET
MISAPPROPRIATION - 1
CASE NO. 2:17-CV-1217

**KELLEY, GOLDFARB,**
**HUCK, ROTH, & RIOJAS, PLLC**
700 Fifth Avenue, Suite 6100
Seattle, Washington 98104
(206) 452-0260

considers a proprietary business model in violation of a mutual non-disclosure agreement dated August 18, 2014 ("NDA"), attached as **EXHIBIT A**.  iPayOne contends Redfin's May 2017 offer to San Diego home sellers to list their properties for a 1% commission is both a misappropriation of its trade secret and a breach of the NDA.

3.      A real case and controversy exists as a result of iPayOne's threatened legal action against Redfin.  Redfin seeks a declaratory judgement that any and all information provided by iPayOne to Redfin is not entitled to trade secret status and was not misappropriated by Redfin.  Redfin also seeks a declaratory judgement that the NDA was not breached.

## THE PARTIES

4.      Redfin is an online real estate brokerage that represents people buying and selling homes.  Redfin.com features broker-listed homes for sale, as well as for-sale-by-owner properties that do not pay brokers a commission.

5.      Founded in 2004 and prior to the introduction of Google Maps, Redfin pioneered interactive map-based real estate searching, by combining satellite maps with real estate information such as listings.  Redfin launched its home-buying services in 2006.

6.      Redfin is incorporated in Delaware and has its principal place of business at 1099 Stewart Street in Seattle, Washington.

7.      iPayOne is a real estate company offering to match home sellers with agents offering discounted commissions.  According to iPayOne's website, "iPayOne has partnered with the best local real estate professionals in your neighborhood to sell your home for as low as 1% commission."  https://www.ipayone.com/why-pay-more.html.

8.      On information and belief, iPayOne LLC is a California Limited Liability Company having its principal place of business at 6650 Lusk Boulevard in San Diego, California.

## JURISDICTION AND VENUE

9.      Redfin incorporates paragraphs 1 through 8, above.

COMPLAINT FOR D. J. NO TRADE SECRET
MISAPPROPRIATION - 2
CASE NO. 2:17-CV-1217

**KELLEY, GOLDFARB,
HUCK, ROTH, & RIOJAS, PLLC**
700 Fifth Avenue, Suite 6100
Seattle, Washington 98104
(206) 452-0260

1    10.     This Court has subject matter jurisdiction based on the Declaratory Judgment

2    Act, 28 U.S.C. § 1331, and the Federal Defend Trade Secrets Act, 18 U.S.C. § 1836.

3    11.     This Court also has subject matter jurisdiction based on diversity pursuant to 28

4    U.S.C. 1332.   As discussed above, Redfin and iPayOne are from different states, and the

5    amount in controversy exceeds $75,000.

6    12.     The Court has personal jurisdiction over iPayOne pursuant to due process and

7    the Washington Long Arm Statute (RCW 4.28.185), due at least to its numerous contacts with

8    Redfin regarding a joint venture or partnership over a three-year period.   Pursuant to those

9    contacts, iPayOne entered into a mutual non-disclosure agreement with Redfin that provides

10   continuing obligations to safeguard confidential information exchanged under the agreement for

11   a period of at least three years.   It is under that agreement that iPayOne claims to have provided

12   confidential and proprietary business model information.   iPayOne also claims that Redfin

13   subsequently used that information at its Washington headquarters to offer 1% commissions to

14   San Diego homeowners, alleging that those acts in the state of Washington constitute a

15   violation of the NDA.

16   13.     Venue is proper in this judicial district under 28 U.S.C. § 1391 because the acts

17   that iPayOne purports constitute trade secret misappropriation and breach of NDA occurred in

18   the Western District of Washington.

19                                        **iPAYONE'S BUSINESS**

20   14.     iPayOne was co-founded by Burke Smith in March 2004.   Shortly thereafter,

21   iPayOne began operating a website, iPayOne.com, offering a range of real estate related

22   services, such as access to real estate agents, mortgage specialist, and escrow services.

23   http://www.voiceofsandiego.org/all-narratives/housing/i-got-out/

24   15.     The main feature of iPayOne.com was offering to list seller's homes on the

25   iPayOne website for a 1% commission.   *Id.*   By grouping real estate-related services together

26   and promoting them through the Internet instead of traditional methods, Smith planned to

COMPLAINT FOR D. J. NO TRADE SECRET
MISAPPROPRIATION - 3
CASE NO. 2:17-CV-1217

**KELLEY, GOLDFARB,**
**HUCK, ROTH, & RIOJAS, PLLC**
700 Fifth Avenue, Suite 6100
Seattle, Washington 98104
(206) 452-0260

1   reduce the cost incurred by realtors for marketing houses for sale.  Smith intended to pass on

2   the savings to the sellers through discounted commissions.  *Id.*

3       16.     The choice of the iPayOne name, *i.e.* "I pay one percent," reflected this business

4   model.  *Id.*

5       17.     The plan to charge sellers a 1% commission was not secret; in addition to the

6   entity name and URL of the website, the 1% listing deal was prominently displayed on the

7   iPayOne.com website.  Below is a screen shot from February 2006:



COMPLAINT FOR D. J. NO TRADE SECRET
MISAPPROPRIATION - 4
CASE NO. 2:17-CV-1217

KELLEY, GOLDFARB,
HUCK, ROTH, & RIOJAS, PLLC
700 Fifth Avenue, Suite 6100
Seattle, Washington 98104
(206) 452-0260

18.     Additionally, numerous publications reported on iPayOne's business model and plan to discount total commissions to 1%. For example, an October 16, 2004 article in South Coast Today entitled, "Firm charges 1 percent commission" explained iPayOne's plans to represent both buyer and seller, among other cost-saving strategies. http://www.southcoasttoday.com/article/20041016/News/310169931

### FOUNDER BURKE SMITH DEPARTS iPAYONE

19.     Sometime in early 2006, Smith pulled the plug on his iPayOne venture, leaving for a job at a traditional real estate company, Prudential California Realty. http://www.voiceofsandiego.org/all-narratives/housing/i-got-out/

20.     According to the "Voice of San Diego," Smith did not believe the iPayOne business model would be successful. "Indeed, Smith said he largely lost faith in the ideas that he once hoped would revolutionize the industry." *Id.*

21.     Smith's LinkedIn profile states that iPayOne was sold to a group of investors in 2006.

22.     By mid 2007, iPayOne shut down its home sales operations. http://www.sdnews.com/view/full_story/302191/article-Sports-Arena-reclaims-name-as-ipayOne-fades-into-sunset

### SMITH CONTACTS REDFIN TO PROPOSE SELLING LISTING LEADS

23.     On July 9, 2014, Smith contacted a director on Redfin's board via an email titled "Redfin follow up," stating that he had relaunched iPayOne and wanted to discuss a potential deal with Redfin.

24.     Around August 8, 2014, Smith had a telephone conference with two Redfin employees to discuss a potential partnership with Redfin to assist in iPayOne's expansion into a new geographic area.

COMPLAINT FOR D. J. NO TRADE SECRET
MISAPPROPRIATION - 5
CASE NO. 2:17-CV-1217

**KELLEY, GOLDFARB,
HUCK, ROTH, & RIOJAS, PLLC**
700 Fifth Avenue, Suite 6100
Seattle, Washington 98104
(206) 452-0260

## THE PARTIES ENTER A MUTUAL NDA

25.     On August 18, 2014, Smith asked Redfin's CEO to execute a mutual non-disclosure agreement, the NDA attached as **Exhibit A**, prior to discussing "critical info I would like to share with you today that impacts both of our businesses due to the fact that we already have so much overlap in our business models in the markets in which we operate and plan to operate . . . ."

26.     Early the same afternoon, Redfin returned the signed NDA to Smith.

## SMITH SUGGESTS REDFIN BUY LEADS FROM HIS OTHER BUSINESS

27.     On September 2, 2014, Smith sent two Redfin employees an email detailing plans to provide listing leads from three test markets from Smith's other company, Organic Lead.

28.     Organic Lead is not a signatory to the NDA and as such Redfin had no obligation to keep information disclosed by Smith regarding Organic Lead's business confidential.

## REDFIN DECLINES THE DEAL, iPAYONE THREATENS LITIGATION

29.     Later in the afternoon of September 2nd, Redfin's CEO told Smith that Redfin was not interested in entering a deal.

30.     Smith replied, "I won't bother you guys anymore."

31.     But only three weeks later, on September 26th, Smith sent an email to Redfin's CEO and the Redfin director he initially contacted again attempting to sell listing leads to Redfin.

32.     On October 2, 2014, Redfin again declines to purchase listing leads from Smith's companies.

33.     Despite Redfin twice rebuffing Smith, Smith contacted Redfin on at least four occasions over the next three years with proposals to sell leads to Redfin.  In those efforts, Smith became increasingly more desperate, suggesting that he could change his brand to

COMPLAINT FOR D. J. NO TRADE SECRET
MISAPPROPRIATION - 6
CASE NO. 2:17-CV-1217

KELLEY, GOLDFARB,
HUCK, ROTH, & RIOJAS, PLLC
700 Fifth Avenue, Suite 6100
Seattle, Washington 98104
(206) 452-0260

"iPayOne powered by Redfin" and that he would be willing to have iPayOne "rolled up into Redfin."

34.     Considering the matter closed, Redfin did not respond or otherwise engage Smith in any further discussions.

35.     On July 12, 2017, iPayOne, through counsel, sent correspondence to Redfin alleging Redfin breached the NDA and misappropriated iPayOne's trade secrets.  According to iPayOne's letter, Redfin "cop[ied] iPayOne's business model and change[d] its own business model to a 1% listing fee model."

36.     iPayOne's correspondence stated that it will "pursue any and all legal and equitable remedies in this matter."

37.     On August 8, 2017, counsel for iPayOne sent Redfin a letter attaching a draft complaint alleging breach of contract and trade secret misappropriation.

## COUNT I: NO MISAPPROPRIATION OF TRADE SECRETS UNDER THE FEDERAL DEFEND TRADE SECRETS ACT

38.     Redfin incorporates paragraphs 1-37.

39.     A substantial controversy regarding whether Redfin misappropriated iPayOne confidential information or alleged trade secrets in violation of the Defend Trade Secrets Act exists as demonstrated by iPayOne's July and August correspondence discussed above.

40.     Redfin has not misappropriated any alleged trade secrets or confidential information of iPayOne.

41.     iPayOne's alleged trade secrets are not entitled to trade secret protection because the alleged trade secrets were publicly known prior to disclosure to Redfin.

42.     iPayOne's alleged trade secrets are not entitled to trade secret protection because the alleged trade secrets do not derive any economic value as demonstrated by Smith's post-departure statements regarding iPayOne's business model and the failure of iPayOne's business.

COMPLAINT FOR D. J. NO TRADE SECRET
MISAPPROPRIATION - 7
CASE NO. 2:17-CV-1217

KELLEY, GOLDFARB,
HUCK, ROTH, & RIOJAS, PLLC
700 Fifth Avenue, Suite 6100
Seattle, Washington 98104
(206) 452-0260

43.     iPayOne's alleged trade secrets are not entitled to trade secret protection because iPayOne did not take reasonable efforts to keep its alleged trade secrets confidential.  As demonstrated above, iPayOne published its allegedly confidential and proprietary trade secrets on its iPayOne website and provided information to various outlets who similarly published stories describing iPayOne's business model.  On information and belief, iPayOne disclosed its business model to numerous people affiliated with iPayOne such as real estate agents who were under no obligation to keep that information confidential.

44.     Nonetheless, iPayOne has threatened to sue Redfin for trade secret misappropriation and breach of the NDA.

45.     A judgment declaring Redfin has not misappropriated any alleged trade secrets or a declaration that the information iPayOne disclosed to Redfin is not entitled to trade secret protection would finalize the controversy between the parties concerning iPayOne's allegations.

46.     Pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.*, Redfin is entitled to a declaration that it has not misappropriated any alleged trade secrets or confidential information and the information disclosed by iPayOne to Redfin is not confidential or entitled to trade secret status.

47.     In light of this existing controversy, Redfin will be damaged in absence of such a declaration.

## COUNT II:  NO MISAPPROPRIATION OF TRADE SECRETS UNDER WASHINGTON'S UNIFORM TRADE SECRETS ACT

48.     Redfin incorporates paragraphs 1-47.

49.     A substantial controversy regarding whether Redfin misappropriated iPayOne confidential information or alleged trade secrets in violation of the Washington Uniform Trade Secrets Act exists as demonstrated by iPayOne's July and August correspondence discussed above.

COMPLAINT FOR D. J. NO TRADE SECRET
MISAPPROPRIATION - 8
CASE NO. 2:17-CV-1217

**KELLEY, GOLDFARB,
HUCK, ROTH, & RIOJAS, PLLC**
700 Fifth Avenue, Suite 6100
Seattle, Washington 98104
(206) 452-0260

50.     Redfin has not misappropriated any alleged trade secrets or confidential information of iPayOne.

51.     iPayOne's alleged trade secrets are not entitled to trade secret protection because the alleged trade secrets were publicly known prior to disclosure to Redfin.

52.     iPayOne's alleged trade secrets are not entitled to trade secret protection because the alleged trade secrets do not derive any economic value as demonstrated by Smith's post-departure statements regarding iPayOne's business model and the failure of iPayOne's business.

53.     iPayOne's alleged trade secrets are not entitled to trade secret protection because iPayOne did not take reasonable efforts to keep its alleged trade secrets confidential.  As demonstrated above, iPayOne published its allegedly confidential and proprietary trade secrets on its iPayOne website and provided information to various outlets who similarly published stories describing iPayOne's business model.  On information and belief, iPayOne disclosed its business model to numerous people affiliated with iPayOne such as real estate agents who were under no obligation to keep that information confidential.

54.     Nonetheless, iPayOne has threatened to sue Redfin for trade secret misappropriation and breach of the NDA.

55.     A judgment declaring Redfin has not misappropriated any alleged trade secrets or a declaration that the information iPayOne disclosed to Redfin is not entitled to trade secret protection would finalize the controversy between the parties concerning iPayOne's allegations.

56.     Pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.*, Redfin is entitled to a declaration that it has not misappropriated any alleged trade secrets or confidential information and the information disclosed by iPayOne to Redfin is not confidential or entitled to trade secret status.

57.     In light of this existing controversy, Redfin will be damaged in absence of such a declaration.

COMPLAINT FOR D. J. NO TRADE SECRET
MISAPPROPRIATION - 9
CASE NO. 2:17-CV-1217

**KELLEY, GOLDFARB,
HUCK, ROTH, & RIOJAS, PLLC**
700 Fifth Avenue, Suite 6100
Seattle, Washington 98104
(206) 452-0260

**COUNT III:  NO MISAPPROPRIATION OF TRADE SECRETS UNDER THE**

**CALIFORNIA UNIFORM TRADE SECRETS ACT**

58.     Redfin incorporates paragraphs 1-57.

59.     A substantial controversy regarding whether Redfin misappropriated iPayOne confidential information or alleged trade secrets in violation of the California Uniform Trade Secrets Act exists as demonstrated by iPayOne's July and August correspondence discussed above.

60.     Redfin has not misappropriated any alleged trade secrets or confidential information of iPayOne.

61.     iPayOne's alleged trade secrets are not entitled to trade secret protection because the alleged trade secrets were publicly known prior to disclosure to Redfin.

62.     iPayOne's alleged trade secrets are not entitled to trade secret protection because the alleged trade secrets do not derive any economic value as demonstrated by Smith's post-departure statements regarding iPayOne's business model and the failure of iPayOne's business.

63.     iPayOne's alleged trade secrets are not entitled to trade secret protection because iPayOne did not take reasonable efforts to keep its alleged trade secrets confidential.  As demonstrated above, iPayOne published its allegedly confidential and proprietary trade secrets on its iPayOne website and provided information to various outlets who similarly published stories describing iPayOne's business model.  On information and belief, iPayOne disclosed its business model to numerous people affiliated with iPayOne such as real estate agents who were under no obligation to keep that information confidential.

64.     Nonetheless, iPayOne has threatened to sue Redfin for trade secret misappropriation and breach of the NDA.

65.     A judgment declaring Redfin has not misappropriated any alleged trade secrets or a declaration that the information iPayOne disclosed to Redfin is not entitled to trade secret

COMPLAINT FOR D. J. NO TRADE SECRET
MISAPPROPRIATION - 10
CASE NO. 2:17-CV-1217

**KELLEY, GOLDFARB,**
**HUCK, ROTH, & RIOJAS, PLLC**
700 Fifth Avenue, Suite 6100
Seattle, Washington 98104
(206) 452-0260

1    protection would finalize the controversy between the parties concerning iPayOne's allegations.

2    66.    Pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.*, Redfin is

3    entitled to a declaration that it has not misappropriated any alleged trade secrets or confidential

4    information and the information disclosed by iPayOne to Redfin is not confidential or entitled

5    to trade secret status.

6    67.    In light of this existing controversy, Redfin will be damaged in absence of such a

7    declaration.

8    ### COUNT IV:  NO BREACH OF NDA

9    68.    Redfin incorporates paragraphs 1-67.

10    69.    A substantial controversy regarding whether Redfin breached the mutual NDA

11    the parties executed on August 18, 2014 exists as demonstrated by iPayOne's July and August

12    correspondence discussed above.

13    70.    Redfin has not breached the mutual NDA.

14    71.    The information disclosed by iPayOne to Redfin was not confidential.

15    72.    The information disclosed by iPayOne to Redfin was not used for any purpose

16    not expressly authorized by the terms of the NDA.

17    73.    Nonetheless, iPayOne has threatened to sue Redfin for breach of the NDA.

18    74.    A judgment declaring Redfin has not breach the NDA would finalize the

19    controversy between the parties concerning iPayOne's allegations.

20    75.    Pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.*, Redfin is

21    entitled to a declaration that it has not breached the NDA.

22    76.    In light of this existing controversy, Redfin will be damages in absence of such a

23    declaration.

24    ### DEMAND FOR JURY TRIAL

25    77.    Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Redfin hereby

26    demands trial by jury of all issues so triable.

COMPLAINT FOR D. J. NO TRADE SECRET
MISAPPROPRIATION - 11
CASE NO. 2:17-CV-1217

KELLEY, GOLDFARB,
HUCK, ROTH, & RIOJAS, PLLC
700 Fifth Avenue, Suite 6100
Seattle, Washington 98104
(206) 452-0260

1

**PRAYER FOR RELIEF**

2      WHEREFORE, Redfin respectfully requests that this Court enter judgment in its favor

3  and against iPayOne as follows:

4          A.      a declaration that Redfin has not misappropriated iPayOne trade secrets;

5          B.      the information disclosed to Redfin by iPayOne between August 18, 2014 and

6  the present does not constitute protectable trade secrets;

7          C.      Redfin did not breach the NDA;

8          D.      an award of attorneys' fees and costs incurred in this action, as allowed by law;

9  and

10         E.      any other relief to which Redfin is entitled or that the Court deems just and

11  proper.

12

13      RESPECTFULLY SUBMITTED this 11th day of August, 2017.

14

15                                          **Kelley, Goldfarb, Huck, Roth & Riojas, PLLC**

16                                          */s/ Christopher M. Huck*
                                            Christopher M. Huck, WSBA No. 34104
17                                          */s/ Kit W. Roth*
                                            Kit W. Roth, WSBA No. 33059
18                                          */s/ R. Omar Riojas*
                                            R. Omar Riojas, WSBA No. 35400
19
                                            700 Fifth Avenue, Suite 6100
20                                          Seattle, Washington 98104
                                            Telephone:  (206) 452-0260
21                                          Facsimile:  (206) 397-3062
                                            Email:  huck@kelleygoldfarb.com
22                                          Email:  roth@kelleygoldfarb.com
                                            Email:  riojas@kelleygoldfarb.com
23
                                            *Attorneys for Plaintiff Redfin Corporation*
24

25

26

COMPLAINT FOR D. J. NO TRADE SECRET
MISAPPROPRIATION - 12
CASE NO. 2:17-CV-1217

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

*/s/ David D Schumann*
David D. Schumann (*pro hac application to be filed*)
*/s/ Ryan Marton*
Ryan Marton (*pro hac application to be filed*)

**MARTON RIBERA SCHUMANN & CHANG LLP**
548 Market St. Suite 36117
San Francisco, CA 94104
Telephone: (415) 360-2511
Facsimile: (415) 795-1081
Email:  david@martonribera.com
Email:  ryan@martonribera.com

*Of Counsel for Redfin Corporation*

COMPLAINT FOR D. J. NO TRADE SECRET
MISAPPROPRIATION - 13
CASE NO. 2:17-CV-1217

# EXHIBIT A

# Mutual Nondisclosure Agreement

THIS MUTUAL NONDISCLOSURE AGREEMENT is made and entered into as of August 18, 2014 between iPayOne, LLC with offices at 2683 via  de la Valle G126, Del Mar, CA 92014 and Redfin with offices at 2025 1st Ave, Suite 500 Seattle, WA 98121.

Purpose.  The parties wish to explore a business opportunity of mutual interest and in connection with this opportunity, each party may disclose to the other party certain confidential technical and business information which the disclosing party desires the receiving party to treat as confidential.

"Confidential Information" means any information disclosed by either party to the other party, either directly or indirectly, in writing, orally or by inspection of tangible objects, including without limitation documents, prototypes, samples, plant and equipment, research, product plans, products, services, customer lists, software, developments, inventions, processes, designs, drawings, engineering, hardware configuration, marketing materials or finances, which is designated as "Confidential," "Proprietary" or some similar designation. Information communicated orally shall be considered Confidential Information if such information is confirmed in writing as being Confidential Information within a reasonable time after the initial disclosure.  Confidential Information may also include information disclosed to a disclosing party by third parties.   Confidential Information shall not, however, include any information which (i) was publicly known and made generally available in the public domain prior to the time of disclosure by the disclosing party; (ii) becomes publicly known and made generally available after disclosure by the disclosing party to the receiving party through no action or inaction of the receiving party; (iii) is already in the possession of the receiving party at the time of disclosure by the disclosing party as shown by the receiving party's files and records immediately prior to the time of disclosure; (iv) is obtained by the receiving party from a third party without a breach of such third party's obligations of confidentiality; (v) is independently developed by the receiving party without use of or reference to the disclosing party's Confidential Information, as shown by documents and other competent evidence in the receiving party's possession; or (vi) is required by law to be disclosed by the receiving party, provided that the receiving party gives the disclosing party prompt written notice of such requirement prior to such disclosure and assistance in obtaining an order protecting the information from public disclosure.

Non-use and Non-disclosure.  Each party shall not use the Confidential Information of the other party for any purpose except to evaluate and engage in discussions concerning a potential business relationship between the parties.  Neither party shall disclose any Confidential Information of the other party to third parties.  If any party makes copies of the Confidential Information of the other party, such copies shall also constitute Confidential Information and any and all confidential markings on such documents shall be maintained.  Neither party shall reverse engineer, disassemble or decompile any prototypes, software or other tangible objects which embody the other party's Confidential Information and which are provided to the party hereunder.

Maintenance of Confidentiality.  Each party shall take reasonable measures to protect the secrecy of and avoid disclosure and unauthorized use of the Confidential Information of the other party.  Without limiting the foregoing, each party shall take at least those measures that it takes to protect its own most highly confidential information, and shall promptly notify the disclosing party of any misuse or misappropriation of Confidential Information of which it becomes aware. Each party shall disclose Confidential Information only to those officers, directors, employees and contractors who are required to have the information in order to evaluate or engage in discussions concerning the contemplated business relationship, and such party shall remain responsible for compliance with the terms of this Agreement by its officers, directors, employees and contractors.

No Obligation.  Nothing herein shall obligate either party to proceed with any transaction between them, and each party reserves the right, in its sole discretion, to terminate the discussions contemplated by this Agreement concerning the business opportunity.

No Warranty.  ALL CONFIDENTIAL INFORMATION IS PROVIDED "AS IS."  NEITHER PARTY MAKES ANY WARRANTIES, EXPRESS, IMPLIED OR OTHERWISE, REGARDING ITS ACCURACY, COMPLETENESS OR PERFORMANCE.

Return of Materials.  All documents and other tangible objects containing or representing Confidential Information which have been disclosed by either party to the other party, and all copies thereof which are

# Mutual Nondisclosure Agreement

in the possession of the other party, shall be and remain the property of the disclosing party and shall be promptly returned to the disclosing party upon the disclosing party's written request.

No License.  Nothing in this Agreement is intended to grant any rights to either party under any patent, mask work right or copyright of the other party, nor shall this Agreement grant any party any rights in or to the Confidential Information of the other party except as expressly set forth herein.

Term.  The obligations of each receiving party hereunder shall survive for a period of three years after the disclosure of the Confidential Information or until such time as all Confidential Information of the other party disclosed hereunder becomes publicly known and made generally available through no action or inaction of the receiving party, whichever is earlier.

Remedies.  Each party agrees that any violation or threatened violation of this Agreement may cause irreparable injury to the other party, entitling the other party to seek injunctive relief in addition to all legal remedies.

Miscellaneous.  Neither party may assign its rights or obligations under this Agreement without the prior written consent of the other party.  Any attempted assignment in violation of this Section 11 will be null and void.  This Agreement shall be governed by the laws of the State of California, without reference to conflict of laws principles.  This document contains the entire agreement between the parties with respect to the subject matter hereof, and neither party shall have any obligation, express or implied by law, with respect to trade secret or proprietary information of the other party except as set forth herein. The invalidity or unenforceability of any provision of this Agreement, or any of its terms or provisions, will not affect the validity of this Agreement as a whole, which will at all times remain in full force and effect.  A failure to enforce any provision of this Agreement will not constitute a waiver thereof or of any other provision.  This Agreement may not be amended, nor any obligation waived, except by a writing signed by both parties hereto.  Any notices required to be given under this agreement shall be deemed given upon the earlier of receipt of five (5) days after mailing by certified mail, return receipt requested, or hand delivery by messenger or express service, to the addresses stated on the first page, or to such other address as the either party may specify to the other in writing form time to time.

**iPayOne, LLC.**

**Redfin**

By: _____

By: _____

Name:  Burke Smith

Name:  Glenn Kelman

Title:   CEO & Founder

Title:   CEO

Date:   8/18/14

Date:   8/18/14

Confidential